Submitted on remand from the Oregon Supreme Court February 5, reversed and
remanded in part; otherwise affirmed April 1, petition for review denied
October 28, 1998 (327 Or 621)

## Barry Joe STULL,
*Appellant,*

*v.*

## Mary M. HOKE,
## Nancy C. Antal and
## Brownstein, Rask, Sweeney, Grim, Kerr & Desylvia,
*Respondents.*

## (9405-03716; CA A86270)

957 P2d 173

Barry Joe Stull filed the brief *pro se*.

Mark W. Potter, Edward S. McGlone III and Wallace & Klor, P.C., filed the brief for respondent Mary M. Hoke.

Donald W. McEwen, Janice N. Turner and McEwen, Gisvold, Rankin, Carter & Streinz filed the brief for respondents Nancy C. Antal and Brownstein, Rask, Sweeney, Grim, Kerr & DeSylvia.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from the ORCP 21 dismissal of his claims for intentional and reckless infliction of emotional distress, fraud, conversion and assumpsit. His action is now before us on remand from the Supreme Court. *See Stull v. Hoke*, 326 Or 72, 948 P2d 722 (1997). We had held that the action was commenced on May 31, 1994, and, thus, that all claims in the complaint were time barred under ORS 12.080 and ORS 12.110(1). *Stull v. Hoke*, 141 Or App 150, 917 P2d 69 (1996). The Supreme Court affirmed in part and reversed in part, holding that the action had been commenced on April 13, 1994, and that ORS 12.110(1) does not bar the fourth claim for intentional infliction of emotional distress and the fifth claim for conversion. Plaintiff's remaining claims are time barred. On remand, we address the remaining assignments of error that apply only to the intentional infliction of emotional distress and conversion claims.

The action arose out of defendants' alleged conduct in 1992 in connection with an underlying forcible entry and detainer proceeding in which plaintiff was the defendant, defendant Hoke was the plaintiff, and defendants Antal and her then law firm, Brownstein, Rask, Sweeny, Grim, Kerr & DeSylvia (Brownstein) were Hoke's attorneys.[1] On April 11, 1994, plaintiff, an inmate at the Columbia River Correctional Institution, delivered the complaint and a request for deferral of filing fees to the prison law librarian with the intent that it be mailed to the Multnomah County Circuit Court for filing. The handwritten complaint alleged claims of assumpsit, intentional infliction of emotional distress, fraud and conversion. Included with the complaint was an "Affidavit of Poverty" and an application for deferral of filing fees. On April 13, 1994, the Multnomah County Circuit Court Administrator (the administrator) received the complaint and the fee-deferral request from the prison librarian. More than six weeks later, on May 31, 1994, the circuit court granted the fee-deferral request, and the complaint was stamped "filed" by the administrator. Defendant Hoke was served on June 4,

---

[1] Antal is no longer associated with Brownstein.

1994, and defendants Antal and Brownstein were purportedly served on June 10, 1994, with summonses and copies of the complaint.

Defendants Antal and Brownstein moved to dismiss the complaint on various grounds. The trial court ruled that they had not been served properly, ORCP 21 A(5), and did not decide the issues raised by the alternative grounds. The trial court's rulings as to defendant Hoke are more complicated. Hoke made six motions pursuant to ORCP 21, but none of them was on the ground of improper service. The only motions involving the fourth and fifth claims that did not involve the statute of limitations issues on which the Supreme Court has ruled are the fourth and sixth motions. In the fourth motion, Hoke moved to dismiss the fourth claim on the ground that it failed to state ultimate facts sufficient to constitute a claim against her. ORCP 21 A(8). In the sixth motion, Hoke sought to make more definite and certain the word "Defendants" in the complaint. ORCP 21 D. The trial court allowed Hoke's motions and granted leave to plaintiff to replead as to Hoke. When plaintiff failed to replead, the trial court entered a judgment of dismissal with prejudice as to all defendants.

Plaintiff appealed, making five assignments of error.[2] In our first opinion, we addressed only the fourth assignment of error, which included the issue of whether the claims against Hoke were time barred. We concluded that all the claims at issue on appeal were time barred, because the action was not commenced until May 31, 1994, the date on which the administrator stamped the complaint "filed."[3] *Stull*, 141 Or App at 153. The Supreme Court ruled that the

---

[2] The first two assignments of error address the trial court's ruling regarding the service of process on Antal and Brownstein. In the third assignment of error, plaintiff contends that "[t]he trial court erred in allowing Rule 21 Motions of Defendant Hoke as a matter of law when Defendant Hoke failed to answer the summons within the thirty-day period." The fourth assignment of error addresses the statute of limitations issue that gave rise to our ruling that the Supreme Court reversed in part and affirmed in part. In the fifth assignment of error, plaintiff argues that "[t]he trial court erred in not addressing plaintiff *pro se* during hearing and failed to conduct the hearing as a reasonable opportunity for plaintiff to present evidence and affidavits in response to Defendants' Rule 21 motions."

[3] The action accrued for the fourth claim on April 30, 1992, and for the fifth claim on May 22, 1992. *See Stull*, 326 Or at 76 n 3.

complaint was filed for purposes of the statute of limitations when the administrator received the complaint on April 13, 1994, and concluded that the fourth and fifth claims were not time barred. On remand, we first address plaintiff's first and second assignments of error, which raise the issue of whether the trial court properly dismissed the action against defendants Antal and Brownstein because they had not been properly served.

Plaintiff's process server left the summons and copy of the complaint for Antal with a receptionist at her office. At the time of the attempted service, Antal was working in a different law office from Brownstein. There was never any follow-up mailing in regard to Antal, and there is no evidence that the receptionist was Antal's authorized agent for purposes of service. Shortly after delivering the papers to Antal's receptionist, the process server returned to the office and asked the receptionist whether Antal had received the summons. She was informed by the receptionist that she had delivered the papers to Antal and that Antal was then reading them.

Plaintiff argues that the court erred by granting Antal's motion. He makes a number of specific contentions, all of which are based on the premise that service on office receptionists at law firms suffice as service on attorneys under ORCP 7 D,[4] despite the fact that no "follow-up" mailing

---

[4] On December 14, 1996, the Council on Court Procedure amended ORCP 7. We refer to ORCP 7 as it existed at the time the complaint was filed. ORCP 7 D provides, as relevant:

"D(1) **Notice required.** Summons shall be served, either within or without this state, in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. Summons may be served in a manner specified in the rule or by any other rule or statute on the defendant or upon an agent authorized by appointment or law to accept service of summons for the defendant. Service may be made, subject to the restrictions and requirements of this rule, by the following methods: personal service of summons upon defendant or an agent of defendant authorized to receive process; substituted service by leaving a copy of summons and complaint at a person's dwelling house or usual place of abode; office service by leaving with a person who is apparently in charge of an office; service by mail; or, service by publication.

"D(2) **Service methods.**

"D(2)(a) **Personal service.** Personal service may be made by delivery of a true copy of the summons and a true copy of the complaint to the person to be served.

of copies of the summons and complaint was made. In *Baker v. Foy*, 310 Or 221, 228-29, 797 P2d 349 (1990), the court established a two-part test for determining the adequacy of service under ORCP 7. First, we must determine whether the method used was permitted by ORCP 7 D(3) and was accomplished in accordance with ORCP 7 D(2). If those requirements are met, service is presumed adequate. If those requirements are not met, then we must analyze whether service is adequate under the reasonable notice standard set forth in ORCP 7 D(1). The court further explained that ORCP 7 D(1) does not require "a particular manner of service" but, rather,

> "endorses the process of examining the totality of the circumstances, to determine if the service of summons was reasonably calculated to provide [the] defendant with notice of the action and [a] reasonable opportunity to appear and defend." *Id*. at 225.

The facts in *Baker* illustrate the test. The plaintiff attempted to make substituted service on the defendant at his mother's home. The defendant had not lived there for more than two years, "although he told investigating officers at the scene of the accident [from which the action arose] that he lived at his mother's residence." *Id*. at 223. The defendant

---

"D(2)(b) **Substituted service.** Substituted service may be made by delivering a true copy of the summons and complaint at the dwelling house or usual place of abode of the person to be served, to any person over 14 years of age residing in the dwelling house or usual place of abode of the person to be served. Where substituted service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed a true copy of the summons and complaint to the defendant at defendant's dwelling house or usual place of abode, together with a statement of the date, time, and place at which substituted service was made. For the purpose of computing any period of time prescribed or allowed by these rules, substituted service shall be complete upon such mailing.

"D(2)(c) **Office service.** If the person to be served maintains an office for the conduct of business, office service may be made by leaving a true copy of the summons and complaint at such office during normal working hours with the person who is apparently in charge. Where office service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed a true copy of the summons and complaint to the defendant at the defendant's dwelling house or usual place of abode or defendant's place of business or such other place under the circumstances that is most reasonably calculated to apprise the defendant of the existence and pendency of the action, together with a statement of the date, time, and place at which office service was made. For the purpose of computing any period of time prescribed or allowed by these rules, office service shall be complete upon such mailing."

eventually discovered the papers "fortuitously" while visiting his mother. The court held that service of process was not presumptively valid because service was not made at the defendant's abode, as prescribed by ORCP 7 D(2)(b); *Id.* at 229-30. The court then looked at the totality of the circumstances and held that "[d]efendant's happenstance reading of the complaint that had been left with his mother while he was making a fortuitous visit to her home is not service in 'a manner reasonably calculated' by plaintiff * * * to apprise defendant of the existence and pendency of the action against him." *Id.* at 230.

■     Plaintiff argues that he has satisfied both prongs of the *Baker* test. First, he contends that he completed personal service on defendants within the meaning of ORCP 7 D(2)(a). He asserts that a "face-to-face encounter" is not always necessary for personal service to occur, and he relies on our holding in *Business & Prof. Adj. Co. v. Baker*, 62 Or App 237, 659 P2d 1025 (1983). In *Business & Prof. Adj Co.*, we held that personal service was adequate under ORCP 7 D(2)(a), notwithstanding the lack of a face-to-face encounter between the process server and the defendant, when the former recognized the latter's voice through a closed door, informed the defendant standing behind the door that he was being served and wedged the papers securely in the area of the door. *Id.* at 240. In contrast, the process server here made no contact with Antal to effect personal service. Rather, what was attempted was akin to an "office service," of the kind and under the circumstances specifically described in ORCP 7 D(2)(c). Plaintiff did not complete that method of service in the manner required by the rule as to Antal because he failed to accomplish a follow-up mailing by sending copies of the summons and the complaint to Antal.[5]

■ ■     Plaintiff also asserts that he has satisfied the requirements of ORCP 7 D(1), which is the second prong of the test set forth in *Baker*. In essence, he asserts that service of process on Antal was reasonably calculated to apprise her of the action, in that the summons and complaint were left at her regular and listed place of legal practice with a person

---

[5] We do not imply that office service would have been successful in this case, had a mailing occurred. *See* ORCP 7 D(2)(c) and ORCP 7 D(3).

she had "empowered" to "interact" with members of the public who have business with her. *See Gallogly v. Calhoon,* 126 Or App 366, 370-71, 869 P2d 346, *rev den* 319 Or 149 (1994) (holding that service of an individual at an address designated by an attorney as the place where he would receive professional correspondence was reasonably calculated to notify the attorney of the pendency of the action against him). In deciding whether the "reasonably calculated" standard of ORCP 7 D(1) is satisfied, we examine the totality of the circumstances. We have held that service on a third person can be adequate under ORCP 7 D(1), if the process server has reason to believe that the person with whom the summons and complaint have been left has regular, frequent and predictable contact with defendant. *See Hoeck v. Schwabe, Willamson & Wyatt,* 149 Or App 607, 617-21, 945 P2d 534 (1997) (discussing the various circumstances in which service of that kind has been held adequate).

■ In determining whether the totality of the circumstances indicates that the service of summons was reasonably calculated to provide Antal with notice of the action and a reasonable opportunity to appear and defend, we focus on what plaintiff and his agent, the process server, knew at the time of the purported service. *Baker,* 310 Or at 225 n 6. Here, the process server went to Antal's office and delivered the complaint and summons to a receptionist. Thereafter, she returned to Antal's office and inquired if Antal had received the papers. The process server was told by the receptionist that Antal had received the papers and, in fact, was reading them. Those facts demonstrate that the actions of the process server, in light of what was known to her at the time, were "reasonably calculated" to provide notice of the pendency of the action and that it was not a mere "happenstance" that Antal received notice of the pending litigation.[6] Accordingly, the trial court erred by allowing Antal's motion to dismiss on the ground of improper service.[7]

---

[6] We do not decide this issue under the actual notice provision of ORCP 7 G, which excuses lesser defects in the form or issuance of a summons after an authorized method of service occurs. *Edwards v. Edwards,* 310 Or 672, 681, 801 P2d 782 (1990); *see also Pham v. Faber,* 152 Or App 635, 641, 955 P2d 257 (1998) (holding that defects in substituted service are not cured by actual notice under ORCP 7 G). Rather, we hold that, under the circumstances, personal service was adequate under ORCP 7 D(1).

[7] Typically, we would decide whether the trial court's dismissal of the complaint was right for the wrong reason by deciding the other motions by Antal

■    We turn to the issue of whether Brownstein was properly served. ORCP 7 D(3)(e) provides that service of process on general partnerships may be made "by personal service upon a partner or any agent authorized by appointment or law to receive service of summons for the partnership." Plaintiff failed to serve one of the partners of Brownstein or an authorized agent. Moreover, assuming that office service applies to a general partnership, plaintiff did not accomplish such service under ORCP 7 D(2)(c) because of a lack of mailing. Therefore, plaintiff has failed to satisfy the first prong of the *Baker* test as to Brownstein.

■    Next, we decide whether Brownstein received service of process that was reasonably calculated to provide it with notice of the action and a reasonable opportunity to appear and defend. Plaintiff explains in his brief about the facts surrounding the purported service of process on Brownstein:

> "Following the delivery of the summons to Defendant Antal, [the process server] then proceeded to the offices of Brownstein Rask, at the address listed in the Oregon Bar Directory. Upon arriving at the building and entering the lobby, she was asked by Ann Welch if she needed help. [The process server] then asked if the business was Brownstein Rask and was informed that it was. She then handed the summons and complaint to the Ms. Welch stating, 'I have something for you.' She then asked Ms. Welch for her name, which she included on the proof of service."

Again, we focus on what was known to the process server at the time of the purported service. The purported service appears at face value to be an attempt at office service under ORCP 7 D(2)(c) without the requisite mailing. As we begin our analysis under ORCP 7 D(1) regarding the service of process on Brownstein, we are mindful that any interpretation under that rule should complement rules like ORCP 7 D(2)(c) and that we must be careful not to arrive at an interpretation that eviscerates completely the express requirements of a rule of presumed adequacy of service, as distinguished from an interpretation that fulfills the underlying

---

against the complaint that were not ruled on by the trial court. However, here the trial court permitted plaintiff to replead as against Hoke. It is conceivable that the trial court would have granted the same leave as against Antal, had it held that there was adequate service and had it ruled in favor of Antal on the other motions. For that reason, remand is appropriate.

purpose of ORCP 7 to provide adequate notice. In that respect, several of our earlier holdings are instructive.

In *Hoeck,* we also focused on what the process server knew at the time of the purported service. 149 Or App at 614. In that case, the process server made additional inquiries about the whereabouts of the defendant and also served the receptionist on the specific floor on which the defendant worked. The process server also recalled that the receptionist said that she would accept service for the defendant, and the plaintiffs mailed a copy of the summons and complaint to the defendant at his work address. We held that service was not presumptively adequate because the plaintiff did not demonstrate that the defendant Guinasso could not be served at his residence. ORCP 7 D(3); *Id.* at 616. However, we held that service was adequate under ORCP 7 D(1) because,

> "the process server left the summons and complaint with a receptionist on the floor of the office where he knew Guinasso regularly worked. He knew that Guinasso was out of the office for one week and that he would be returning to the office in a matter of days. He was acquainted with Guinasso, had personal knowledge of his employment at the Lane Powell firm and previously had served papers at that firm. Plaintiffs then followed up that service with notice by certified mail, return receipt requested." *Id.* at 618.

In *Boyd and Boyd,* 131 Or App 194, 196, 884 P2d 556 (1994), *rev den* 320 Or 507 (1995), the father hired a bookkeeper for the purpose of receiving his mail and taking care of his child support obligations. The process server served the bookkeeper with an order to show cause and also mailed a copy of the order to the father in care of the bookkeeper's office, as well as to the father's last known address and to his employer. We examined the totality of the circumstances and determined that "[b]ecause [the father] implicitly had designated [the bookkeeper] as the recipient of correspondence about those matter, that arrangement implies that he had regular contact with her concerning them." *Id.* at 200 n 2. Similarly, in *Gallogly,* service occurred at the place that the defendant had designated to receive professional correspondence, and the service at that location was followed up by a

mailing of the complaint and summons to the defendant at that address by regular mail. 126 Or App at 370.

The contrast between what the process server knew in this case and what the process server knew in those cases is clear. Here, the record does not indicate whether Welch is a person who had been designated expressly or implicitly to receive service of process or important correspondence for Brownstein. The process server saw Welch standing by the receptionist's desk, and Welch asked the process server "if she could help [her]." There is no indication as to the frequency and nature of contact that Welch had with the partners of the firm or the extent of her duties. She did not tell the process server that she would deliver the complaint and summons to any of the defendant partners. Rather, the papers were simply left with her without any inquiry and without any follow-up mailing, as is required by the rules regarding office service. On those facts, we cannot hold that the service on the office receptionist was reasonably calculated to apprise Brownstein about the pendency of plaintiff's action. Accordingly, the trial court did not err by allowing Brownstein's motion to dismiss for lack of service and entering judgment in their favor.

█ In plaintiff's third assignment of error, he argues that the trial court erred in allowing the ORCP 21 motions as to defendant Hoke because Hoke failed to answer the complaint within the 30-day period from the date of service. We do not address that assignment of error because it poses an issue that was not raised before the trial court and therefore not preserved for purposes of appeal. ORAP 5.45(2). The fourth assignment of error raises the statute of limitations issue regarding the fourth and fifth claims on which plaintiff prevailed in the Supreme Court. However, the trial court additionally dismissed the fourth claim as against Hoke on the ground that plaintiff failed to allege sufficient facts to state a claim. ORCP 21 A(8). The trial court also dismissed the entire complaint with prejudice as to Hoke when plaintiff failed to replead and make the complaint more definite and certain as to the word "Defendants" in all claims. ORCP 21 D. Plaintiff does not assign either of those alternative rulings as error. The effect of that failure is that even though plaintiff alleges claims that are not time barred, he has not appealed

the dismissal of those claims on the other grounds relied on by the trial court for its ruling. Therefore, the dismissal of his claims against Hoke remains on grounds that are not assigned as error. We will not reverse the trial court's ruling dismissing the complaint as to Hoke on grounds not assigned as error. ORAP 5.45(2).[8]

The gist of plaintiff's fifth assignment of error is not entirely clear. To the extent that he argues that, as a *pro se* litigant, he was entitled to argue orally against the motions, it was within the trial court's discretion to deny further argument when defendant confirmed that his position was as set forth in the affidavit of the process server. Plaintiff also argues that he was not allowed to present evidence about the insufficiency of the services of process. However, the record does not support that assertion. The trial court reviewed the affidavit of the process server, and plaintiff confirmed to the court that his position was as stated in the affidavit.

In summary, the intentional infliction of emotional distress and conversion claims against Antal were improperly dismissed for lack of service of process by the trial court. However, the trial court ruled correctly as to defendants Brownstein when it dismissed the action against them because no service of process occurred. Regarding defendant Hoke, there is no error for the reasons stated.

Reversed and remanded as to the fourth claim for intentional infliction of emotional distress and the fifth claim for conversion against defendant Antal; otherwise affirmed.

---

[8] Although Antal also made similar motions, the trial court never ruled on them, and plaintiff has never had the opportunity to replead as to her.